**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LONNIE JACKSON, ID #4205-13,** | ) | |
| **ID # 559445,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 3:14-CV-0360-B-BH** |
| | ) | |
| **ABE PARTINGTON, et al.,** | ) | |
| **Defendants.** | ) | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the order of reference dated April 28, 2015 (doc. 47), this case was referred for pretrial management.  Before the Court is *Defendant's Motion for Summary Judgment*, filed May 29, 2015. (doc. 52.)  Based on the relevant filings and applicable law, the motion should be **GRANTED in part** and **DENIED in part**.

## I.  BACKGROUND

On January 29, 2014, Lonnie Jackson (Plaintiff) sued Officer Abe Partington (Defendant) of the Waxahachie Police Department, and Lieutenant Coleman, Sergeant Buchanan, and Officers Roundtree, Riley, and Lambert of the Ellis County Jail (the Jail) for excessive force under 42 U.S.C. § 1983.  (doc. 3.)  He also asserted claims against several nurses and an unnamed doctor for denial of medical care.  (doc. 7 at 9.)[1]  The claims against all defendants, except the excessive force claim against Defendant, were dismissed with prejudice as frivolous on September 22, 2014, during preliminary screening.  (*See* doc. 22.)

Plaintiff alleges that following his arrest on November 21, 2013, Defendant purposely "tripped" or "dropped" him as he was getting out of the police car with his hands cuffed behind his

---

[1]Plaintiff's answers to the questions in a magistrate judge's questionnaire constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153,* 23 F.3d 94, 97 (5th Cir. 1994).

back at the Jail, which caused him to fall on the concrete and injure his shoulder and skin his knee. (docs. 3 at 5; 7 at 7-9.)  After he fell, Defendant allegedly smiled or laughed as he picked Plaintiff up off the ground. (docs. 3 at 5; 7 at 7.)  Later, while Defendant booked Plaintiff into the Jail, Defendant twisted Plaintiff's arm behind his back, choked him, and called him a "dumb a** inmate." (*Id*.)  This resulted in injuries to Plaintiff's wrist, neck, and back. (*Id*. at 8.)  He alleges that the events were more traumatic to him because he had been diagnosed with paranoid schizophrenia and sleep deprivation. (*Id*.)  Plaintiff acknowledges that he used "verbal language" towards Defendant, but not until after Defendant "choked" him.  (*Id*.)

According to Defendant, he has been a police officer with the Waxahachie Police Department since 2010, and Plaintiff was well known to him because he had arrested him twice before.  (doc. 54 at 3.)  During the departmental briefing for his shift on November 21, 2013, Defendant learned that Plaintiff had an outstanding warrant for his arrest. (*Id*.)  At approximately 7:30 p.m., during his normal patrol, Defendant observed Plaintiff walking along a public street. (*Id*.) He detained Plaintiff, confirmed the warrant with dispatch, arrested him, searched him, and took him to the Jail. (doc. 54 at 3-4.)

Defendant contends that after arriving at the Jail, he pulled his vehicle into a "Sally Port" and opened the rear door to remove Plaintiff. (doc. 54 at 4.)  He warned Plaintiff that the ground was wet from rain. (*Id*.)  As Plaintiff got out, he slipped on the wet pavement and fell to his knees. (*Id*.) Defendant claims he made no physical contact with Plaintiff until after he had begun to fall, at which point he grabbed Plaintiff's upper torso before he hit the ground and gently lowered him to the ground. (*Id*.)  Defendant then helped Plaintiff back to his feet.  (*Id*.)

Once inside the Jail, Plaintiff was strip-searched by jail personnel, given a medical

2

evaluation, and taken to the book-in area where Defendant was waiting. (*Id.*) Plaintiff refused to approach the fingerprint machine, telling Defendant to "get a warrant." (*Id.*) After he refused a second time, Defendant called for assistance from jail personnel. (*Id.*) Defendant took Plaintiff's left hand and pulled him toward the fingerprint station without using any unusual force. (*Id.*) Defendant then attempted to open Plaintiff's hand, which was clenched in a fist. (*Id.*) After several minutes of refusing to open his hands, Plaintiff backed away from the fingerprinting station, Defendant, and jail personnel. (*Id.*) To get control of Plaintiff, Defendant briefly pushed him against the wall, put his hand on Plaintiff's chest and neck area for "less than a second," and then moved him back to fingerprinting station. (doc. 54 at 4-5.) Finally, Plaintiff agreed to allow jail personnel—but not Defendant—to take his fingerprints. (doc. 54 at 5.)

A video of the incident at the book-in area shows that Plaintiff was sitting in the book-in area of the Jail and refusing to follow instructions before Defendant made any physical contact with him. (*See* doc. 55.) It shows Defendant physically grasping Plaintiff's arm and moving him after he refused to stand-up and move to the fingerprint machine. (*Id.*) Additionally, the video shows Defendant pushing Plaintiff on the upper chest and neck area when he began to move away from the fingerprint station. (*Id.*)

On May 29, 2015, Defendant filed a motion for summary judgment. (doc. 52) Plaintiff responded on June 2, 2015 (doc. 56), and Defendant filed a reply on July 17, 2015. (doc. 57.)[2] The motion is now ripe for recommendation.

---

[2] Plaintiff also filed a sur-reply on August 4, 2015, without leave of court. (*See* doc. 58); *see also* L.R. 56.7 ("Except for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence.") Since Plaintiff has not sought leave to file her sur-reply, "it will not be considered." *Neely v. Khurana*, No. 3:07–CV–1344–D, 2009 WL 1605649, at *3 n. 4 (N.D. Tex. June 5, 2009). Even if considered, the sur-reply would not change the findings or recommendation.

## II. SUMMARY JUDGMENT STANDARD FOR QUALIFIED IMMUNITY CASES

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Typically, a movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the context of § 1983 litigation, however, governmental employees asserting the defense of qualified immunity in a motion for summary judgment need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). They have no burden to put forth evidence. *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 633–34 (5th Cir. 2000).

The burden then shifts to the non-movant to show that the defense does not apply. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).  The non-movant must identify specific evidence in the record and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).[3]  Although courts

---

[3] Courts must construe the pleadings of *pro se* litigants liberally, as they are held to less stringent standards than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam).  They have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment," however. *Adams v. Travelers Indent. Co.*, 465 F.3d 156,

view the evidence in a light most favorable to the non-movant, *Anderson*, 477 U.S. at 255, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.' " *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).  The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

Here, Defendant has carried his summary judgment burden by asserting the qualified immunity defense.  *See Gates*, 537 F.3d at 419.  The burden now shifts to Plaintiff to produce evidence showing that Defendant violated his constitutional rights and that the violation was objectively unreasonable under clearly established law at the time of the violation.  *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407-08 (5th Cir. 2007).

### III. QUALIFIED IMMUNITY

Defendant moves for summary judgment on grounds that he is protected from suit by qualified immunity. (doc. 52 at 1.)

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992).  Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Because an official is entitled to immunity from suit, not

---

164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

merely from liability, immunity questions should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. Under the first prong, court consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id*. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to each case. *Pearson*, 555 U.S. at 236; *Lytle v. Bexar County*, 560 F.3d 404, 409 (5th Cir. 2009). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

Here, Defendant has carried his summary judgment burden by asserting his qualified immunity defense. *See Gates*, 537 F.3d at 419. The burden now shifts to Plaintiff to produce evidence showing that Defendant violated his constitutional rights and that the violation was objectively unreasonable under clearly established law at the time of the violation. *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407–08 (5th Cir. 2007).

## A.     Constitutional Violation

Defendant contends that Plaintiff cannot establish a constitutional violation and otherwise overcome his entitlement to qualified immunity. (doc. 53 at 113.)

## 1.      *Applicable Standard*

Plaintiff's excessive force claim arises under either the Fourth or Fourteenth Amendments, which have different standards, depending on whether he was an arrestee or a pretrial detainee at the time of the alleged excessive force.  Although Plaintiff's complaint is silent as to whether his claim arises under the Fourth or Fourteenth Amendment, Defendant contends that Plaintiff was a pre-trial detainee because his arrest was completed before he was taken to the Jail. (doc. 53 at 8-10, 12-13.)

In *Valencia v. Wiggins*, 981 F.2d 1440, 1443-44 (5th Cir. 1993), the Fifth Circuit identified three factors to consider in determining when the transition from arrestee to pre-trial detainee occurs: (1) whether the incidents of arrest were completed; (2) whether the plaintiff had been released from the arresting officer's custody; and (3) whether the plaintiff had been in detention awaiting trial for a significant amount of time.  Here, it is undisputed that the incident of Plaintiff's arrest had been completed at the time of the alleged excessive force. (docs. 3 at 6; 53 at 6.)  Both incidents of which he complains occurred shortly after his arrival at the Jail.  Because the book-in process had not yet been completed, however, Plaintiff had not yet been released from Defendant's custody.  He was not yet in detention awaiting trial, let alone for a significant amount of time.  Under the *Valencia* factors, he was still an arrestee at the time of the alleged excessive force, and his claims therefore arise under the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A seizure occurs when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968).  The Supreme Court

has held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). To succeed on a Fourth Amendment excessive force claim under § 1983, a plaintiff must show "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Goodman v. Harris County*, 571 F.3d 388, 397 (5th Cir. 2009); *accord Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

A violation under the Fourth Amendment is dependant on whether the alleged use of force was objectively unreasonable under the circumstances. *Graham*, 490 U.S. at 395. Objective reasonableness is "a pure question of law" that is considered after determining the relevant facts. *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). To gauge the objective reasonableness of the force used, the courts "must balance the amount of force used against the need for force." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)). Proper application of this balancing test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The reasonableness inquiry must consider "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 397.

### 2.      *Police Car Incident*

To carry his summary judgment burden on his claim that Defendant used excessive force, Plaintiff presents sworn allegations that he complied with Defendant's directions and offered no resistence when getting out of the police car while wearing handcuffs, but that Defendant tripped or dropped him on the ground, resulting in injuries to his shoulder and knee.[4] (docs. 3 at 5; 7 at 7-9.) He also presents medical evidence showing he had an avulsion fracture in his shoulder when tests were run on March 31, 2015. (*See* doc. 56 at 4.)

Defendant denies that he injured Plaintiff and contends that Plaintiff did not sustain any actionable injury. (doc. 53 at 16.)  He provides the initial screening notes prepared when Plaintiff was brought to the Jail, which reflect that he reported no recent injuries or head trauma. (doc. 54 at 11.)  Additionally, the health assessment that was completed and reviewed by Plaintiff reported no abnormalities in his physical condition, identified his appearance and mobility as normal, and reported no bruises or skin issues. (doc. 54 at 8-9.)  The medical records also show that Plaintiff did not list any movement issues or reference his alleged injuries from the fall when he reviewed and signed the health assessment at 9:00 p.m. on November 21, 2013.  (doc. 54 at 9.)  Although the medical records may show a lack of physical injury to Plaintiff, this does not conclusively establish that the force used was not excessive, or that it was *de minimis* in light of Plaintiff's summary judgment evidence.  While the medical records may be relevant to his credibility, credibility determinations are inappropriate on summary judgment.  *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005).

---

[4] Plaintiff's sworn complaint may serve as competent summary judgment evidence "to the extent that it comports with the requirements of Fed. R. Civ. P. 56(e)." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Barnes v. Johnson*, 204 F. App'x 377, 378 (5th Cir. 2006).

Plaintiff's sworn version of the facts is sufficient to create a genuine issue of material fact regarding what happened as he was getting out of the police car.  Where the evidence raises a genuine issue of material fact, courts "assume plaintiff's version of the facts is true, then determine whether those facts suffice for a claim of excessive force under [the] circumstances." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 320 (5th Cir. 2000).  Under his version of the facts, a reasonable jury could find that Plaintiff was compliant and nonresistant as he was getting out of the police car, so no force was needed, and that Defendant violated his Fourth Amendment rights by using excessive force against him.

### 3.      *Book-in Incident*

To meet his summary judgment on his claims concerning the book-in process, Plaintiff presents sworn allegations that Defendant pushed him to into a wall, twisted his arm, bent his fingers back, and put him into a choke hold after he expressed safety concerns about being around Defendant.  (doc. 3 at 6.)  Although he concedes that he used verbal language against Defendant, he claims that he only did so after Defendant "choked" him in the book-in area of the Jail. (doc. 7 at 1,7.)

Defendant has provided a DVD of the altercation in the book-in area of the Jail. (*See* doc. 55.)  The video reflects that Plaintiff refused to cooperate with Defendant during the book-in process at the Jail. (*Id*.)  Plaintiff was not handcuffed. (*Id*.)  When asked by Defendant to approach the fingerprint machine, he refused. (*Id*.)  When Defendant attempted to move Plaintiff to the machine by grasping his arm, Plaintiff physically resisted. (*Id*.)  Once at the machine, Plaintiff closed his hands into fists, refused to open them, and moved one fist behind his back. (*Id*.)  The video also reflects that Plaintiff exchanged words with Defendant, and that jail personnel also attempted to

10

control Plaintiff. (*Id.*) After Plaintiff's movement away from the fingerprint machine and Defendant, Defendant briefly put his hand on Plaintiff's upper-chest and neck and pushed him against the wall to get control of him. (*Id.*)

As noted, the evidence must generally be viewed in the light most favorable to the nonmoving party if there is a genuine dispute as to the facts. *See Wagner*, 227 F.3d at 320. In *Scott v. Harris*, 550 U.S. 372, 380-81 (2007), however, the plaintiff's version of events was contradicted by a videotape of the relevant events. The Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. The court may instead rely on the videotape of the events in evaluating the motion for summary judgment rather than the "visible fiction" offered by the non-moving party. *Id.* at 381.

Here, Plaintiff's version of how Defendant slammed him against the wall and choked him without provocation is contradicted by the DVD. It may therefore be disregarded under *Scott*. As a result, he has not brought forward sufficient evidence to support a resolution in his favor on whether Defendant violated his constitutional rights by using excessive force during the book-in process. Defendant is therefore entitled to qualified immunity with regard to this claim.

### B.    Objective Reasonableness in Light of Clearly Established Law

To show the inapplicability of the asserted qualified immunity defense, Plaintiff must also present evidence to show that the violation of his constitutional rights was objectively unreasonable given the clearly established law at the time of the alleged constitutional violation. *See Zarnow*, 500 F.3d at 407–08.

For purposes of qualified immunity, "clearly established" means that the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Being clearly established in an abstract sense generally gives insufficient notice; in most cases, the law should be clear in a more particularized sense related to the specific context in which the officer is acting. *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004) (per curiam); *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc); *see also Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (recognizing that when the constitutional violation is obvious, a materially similar case is unnecessary to find the law clearly established). Because the primary concern is fair notice to the officer, the law can be clearly established in some cases "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope*, 536 U.S. at 740 (citation omitted).

At the time of Plaintiff's arrest in November 2013, it was clearly established that the permissible amount of force necessary to arrest a suspect depends, in part, on whether the suspect was resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396. Under Plaintiff's version of events, he was handcuffed, following Defendant's directions, and not attempting to flee when he got out of the police car and Defendant allegedly tripped or dropped him on the ground. Defendant should have known that under the circumstances, this level of force was not permissible. *See Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (holding that the defendant should have known that he could not forcefully slam Bush's face into a vehicle while she was restrained, subdued, and not attempting to flee).

In summary, Plaintiff has provided competent summary judgment evidence sufficient to

create a genuine issue of material fact regarding the events when he exited the police car on November 21, 2013.  His version of the facts, which the Court must take as true for purposes of this motion, suffices to support a finding that Defendant violated his constitutional rights by using excessive force against him and that the violation was objectively unreasonable under clearly established law at the time of the violation. The disputed material facts regarding the use of force as Plaintiff was getting out of the police car preclude "the Court from granting summary judgment on the ground of qualified immunity" on this claim.  *Malone v. City of Fort Worth*, No. 4:09–CV–634–Y, 2014 WL 5781001, at *15 (N.D. Tex. Nov. 6, 2014) (quoting *Estate of Henson v. Wichita Cnty.*, 652 F.Supp.2d 730, 748 (N.D. Tex. 2009)).[5]

## IV. RECOMMENDATION

Defendant's motion for summary judgment on grounds of qualified immunity should be **GRANTED in part** and **DENIED in part**.  Plaintiff's claim for excessive force in the book-in area should be **DISMISSED with prejudice** on grounds of qualified immunity.  His claim for excessive force as he was getting out of the police car should remain pending for trial.

**SO RECOMMENDED on this 9th day of November, 2015.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[5] Because Plaintiff has not shown the existence of a genuine issue of material fact as to whether Defendant used excessive force during the book-in process, it is unnecessary to determine objective reasonableness in light of clearly established law for that incident.

13

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE